## Boggs Stave & Lumber Co. v. Pennington.

Nov. 19, 1940.

S. M. Ward, Judge.

M. C. Begley for appellant.

Isaac Turner, J. H. Asher and S. E. Duff for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, James Pennington, sold a tract of timber to the appellant, which had a stave mill down Coon Creek, in Leslie County, about two miles from the tract, on or near which Pennington lived. It was con-

templated during negotiations, and possibly when the verbal agreement was reached, that another mill would be placed in Pennington's garden, but before the signing of the conveyance and contract he made some changes in it, which were accepted by the appellant. This made the instrument ambiguous in respect to the right giving rise to this suit. As drawn the contract provided that the company should have "a free right for mill sites, stacking yards and any" purpose necessary for the removal and manufacture of the timber. It was further stipulated:

"In cutting and removal and in the manufacture of said timber second party agrees that the first party may have free of charge all of the waste, including cull staves and such of said timber that is of no shipping value, and the first party agrees that he will take, receive and accept same at the upper mill site and that he will keep same removed as it accumulates at the mill. * * *

"It is agreed that in the cutting and removal of the aforesaid timber the second party has the privilege of taking all such timber as stands on Coon Creek below first party's barn to its present mill site on said creek and, also, all of the white oak, poplar, basswood and sugar trees standing, growing and lying on any part of said land to said present mill site on Coon Creek."

Pennington struck out the clause giving the right to a mill site, etc., first above quoted, and interlined after the last paragraph quoted: "First party agrees for all timber to be moved to the present mill site of second party to be manufactured."

The timber was cut in blocks or bolts and hauled to the mill where it was manufactured into staves. The failure of Pennington to get the waste products resulted in the recovery of a $500 judgment.

It is to be noted that the contract as signed permitted the company to take the timber below the barn and all of four kinds on the entire tract to its mill down the creek, and that Pennington was not entitled to any waste from it. The parties modified the contract to provide that all the timber should be taken there, for the interlineation in ink prevails over the original typewritten

conflict. However, the provision was left in the contract that Pennington should have all the waste to be taken and received "at the upper mill site and that he will keep the same removed as it accumulates at the mill." It is appellant's contention that since there was never any upper mill site because of appellee's refusal, he was entitled to none of the waste; that it was understood that this refusal cancelled all provisions giving the waste to him, and that the trial court should have directed a verdict for the defendant under such a construction of the contract. We do not find it necessary to say which construction is proper in this respect.

The appellee insists that he was entitled not only to the waste from the mill but to all cull staves which he claimed are of a grade lower than standard but of the same length and character. Upon that hypothesis without qualification or knowledge, he made a general guess that he should have received at least 200,000 of them. When it came to fixing the value as a measure of recovery, Pennington could only say that there were "plenty of people to buy them over there," but he knew of no cull staves being sold in the county and knew nothing of the market value. He could have used them in fencing and building and covering barns or cribs. Although there was plenty of waste lumber and refuse, Pennington did not know how much there was nor its value. He did not offer to undertake to remove the cull staves or the waste from the mill as it accumulated as was required by his contract. This, he says, was because Boggs, the company's president, did not notify him that he was sawing his timber as he had promised to do. However, Pennington knew all the time that his timber was being moved to the mill and that it was being operated, although he testified he did not know whose timber was being sawed. All the evidence, including his own, contradicted this statement. Long after the operations had begun, and apparently near the close, Pennington sent his team to the mill and got a load of material. There is conflict in the testimony whether the driver was told by defendant's superintendent not to come back for more. Boggs related that after the sawing was completed Pennington came to the mill and demanded enough cull staves to fence his farm. He did not take the request seriously and made no response. Pennington then brought this suit to recover $1,500 damages.

A "cull stave" is defined by the manufacturer as being a defective one though it might be cut into smaller lengths of good staves. The waste of the mill was burned in the furnace or hauled away as worthless. Sometimes the culls were sold to neighbors at $2 a thousand. The head sawyer testified that there was practically no waste at the mill from this timber because only such blocks as would make good staves were hauled on account of the long distance. There was not enough waste from this to fire the mill and wood was hauled there in trucks to burn. On the contrary, two witnesses for the appellee testified that there were large stacks of waste material and the company poured gasoline on it and burned it, night and day, in order to get rid of it.

We think the proper construction of this contract is that Pennington should have only the waste products not salable on the general market, for the terms are, "all of the waste, including cull staves and such of said timber that is of no shipping value." The last clause but defines the word "waste." The evidence did not disclose with sufficient definiteness the quantity of waste nor its value at the mill where Pennington was entitled to receive it. It was admitted that Pennington had not performed his agreement to remove the waste as it accumulated. He knew that his timber was being sawed, so the failure of the company to notify him formally to that effect did not relieve him of his obligation. Upon these grounds, we think the court should have directed a verdict for the defendant.

The judgment is reversed.